# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KYLE WILLIAMS,** ) | |
| 2161 Longleaf Circle ) | |
| Lakeland, Florida 33810, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| **INDEPENDENT ELECTRIC** ) | **JURY TRIAL DEMANDED** |
| **MACHINERY COMPANY,** ) | |
| (Serve: ) | |
| Jim Kobilarscik, Resident Agent ) | |
| 4425 Oliver Street ) | |
| Kansas City, Kansas 66106), ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Kyle Williams states the following as his cause of action against Independent Electric Machinery Company.

1. Plaintiff Kyle Williams ("Plaintiff") is a male resident of Lakeland, Polk County, Florida.

2. Defendant Independent Electric Machinery Company ("Defendant") is a foreign corporation that is registered to conduct business in the State of Kansas.

3. Defendant is an employer as defined and within the meaning of 42 U.S.C. § 12111(5) of the Americans with Disabilities Act Amendments Act of 2008 (ADAAA).

4. Plaintiff is bringing these claims pursuant to the ADAAA, 42 U.S.C. § 12101, *et seq*.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

6. Venue is proper because a substantial part of the events or omissions giving rise to

these claims occurred in Wyandotte County and/or Sedgwick County, Kansas in the District of Kansas within the meaning of 28 U.S.C. § 1391(b).

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission alleging that Defendant engaged in the discriminatory actions that are being raised in this lawsuit, or alternatively, the allegations of Plaintiff's lawsuit would have arisen from the investigation of Plaintiff's Charge of Discrimination.

8. A Notice of Right to Sue has been issued by the Equal Employment Opportunity Commission and this action is being brought within ninety (90) days from the issuance of such Notice of Right to Sue.

9. Plaintiff has fulfilled all conditions precedent to the bringing of this claim and has duly exhausted all administrative procedures in accordance with the law prior to instituting this lawsuit.

10. On or about October 10, 2023, Plaintiff began working for Defendant as the Branch Manager at Defendant's Wichita, Kansas location.

11. Defendant's President is David Launder, Jr. (D. Launder), and the Vice President of Operations is Jeff Martin (Martin).

12. In August of 2024, Plaintiff was hospitalized on two occasions for treatment of hepatic encephalopathy (HE) related to his diagnosis of cirrhosis of the liver.

13. HE is a brain disorder that can develop in people with liver disease, particularly cirrhosis.

14. HE, also known as "brain fog," is caused by the buildup of toxins, such as ammonia, in the bloodstream that the liver can't remove.

15. Due to Plaintiff's hospitalization, he was off work August 6-9 and 20-21, 2024.

16. On or about September 9, 2024, Defendant hired Craig McClune (McClune) to work as a Service Specialist at the Wichita, Kansas location.

17. Plaintiff was not involved in the decision to hire McClune, although he had been the person who made the hiring decisions for Defendant's Wichita, Kansas location prior to McClune's hire.

18. After McClune's hire, Martin began providing training to McClune in areas in which Plaintiff had not been training.

19. After McClune was hired, Martin was visiting the Wichita, Kansas location sometime in September 2024 and asked Plaintiff to join him for dinner and drinks at Twin Peaks.

20. Plaintiff told Martin that he was happy to join him, but he had a condition that limits his alcohol intake.

21. On or about October 24, 2024, D. Launder came to Defendant's Wichita, Kansas location.

22. During D. Launder's visit, D. Launder told Plaintiff that he was doing a great job, that the location was making money, and that Plaintiff had accomplished what Defendant had hired him to accomplish.

23. D. Launder also told Plaintiff that he would be receiving a $5,000 increase in his base salary because of his strong work performance.

24. Plaintiff's raise became effective for the pay period beginning October 27, 2024.

25. In November or December 2024, Plaintiff told Martin that his doctor had referred him to a liver specialist because his MELD (Model for End-Stage Liver Disease) scores continued to elevate.

26. In response, Martin told Plaintiff he had a friend who had cirrhosis of the liver and

had received three liver transplants because he would not stop drinking alcohol.

27. Plaintiff told Martin that he was no longer drinking any alcohol.

28. Near the end of December 2024, Plaintiff was again hospitalized for treatment of HE and was off work from December 17-20, 2024.

29. Plaintiff explained and discussed his medical condition and reason for his hospitalization to Martin.

30. At the company holiday party, Plaintiff shared with Jayme Moore (Moore), who worked in Human Resources, that he was not drinking alcohol because he had been diagnosed with cirrhosis of the liver.

31. On February 20, 2025, Plaintiff had an appointment with a specialist at the University of Kansas Health System in Kansas City, Kansas.

32. After Plaintiff's medical appointment, he stopped by the company's corporate office in Kansas City, Wyandotte County, Kansas.

33. Plaintiff then had a meeting with Martin; D. Launder; Andy Launder, Vice President of Marketing and Sales (A. Launder); and Moore.

34. Plaintiff's wife was also present for the meeting.

35. During the meeting, Plaintiff told Martin, D. Launder, A. Launder, and Moore about his doctor's appointment and let them know that he may need a liver transplant sometime in the future.

36. D. Launder told Plaintiff that he should take a three-month medical leave of absence allegedly for his safety and the safety of others.

37. Plaintiff did not request this leave or feel that he needed medical leave.

38. Rather, Plaintiff believed he was capable of continuing working.

39. Either D. Launder or Moore asked Plaintiff to email them his consent for them to speak with Plaintiff's doctor regarding his medical condition and to check in with them every two weeks to update them on his progress.

40. Plaintiff did so at their request.

41. After this meeting, Plaintiff received a letter dated February 25, 2025, from Moore that stated in relevant part:

> We hope this letter finds you well. As discussed, due to your current medical condition and recent health-related incidents, Independent Electric has determined that it is in the best interest of both your well-being and workplace safety to place you on a **medical leave of absence**, effective as of 2/24/2025. This decision has been made to ensure that you have the necessary time and resources to focus on your health and recovery.
>
> During your leave, we will hold your position, and you will be required to provide **bi-weekly check-ins** with Jayme or another designated representative. Additionally, any significant medical updates should be shared with us as soon as possible. Before returning to work, you will need to provide a **full medical release** from your healthcare provider, confirming that you are medically fit to resume your duties without risk of further incidents.
>
> At this time, we do not intend to replace your position, as we support you in your recovery. However, we will reassess your status as needed based on your medical progress and expected return timeline.

42. Plaintiff tried multiple times to contact Moore after the February 20, 2025, meeting to request a copy of his job description and a return-to-work form, but he did not hear back from her.

43. On or about March 12, 2025, Plaintiff contacted Moore to let her know that he was fine to work.

44. Moore told Plaintiff that he needed to provide a letter from his doctor stating that he was able to return to work.

45. On or about March 21, 2025, Plaintiff provided Moore a letter from his doctor

stating that he was able to work.

46. On March 27, 2025, Plaintiff received a text message from Moore stating that she and D. Launder would call Plaintiff at 10:00 a.m.

47. During the call, D. Launder told Plaintiff that he was fired.

48. D. Launder claimed that Plaintiff was being fired because of his absences (for which they claimed he did not call), because he was allegedly disrespectful to one of the employees who worked in the Wichita, Kansas office and because he had allegedly taken money from the petty cash box that was kept at the Wichita, Kansas office.

49. Plaintiff vehemently denies these allegations, as he kept the office notified when he was in the hospital receiving treatment for his liver condition and/or HE, he did not take any money from the petty cash box for which he did not provide a receipt showing the purchase of a work-related item/equipment, and since he did not treat any employees disrespectfully.

50. Plaintiff suffered from a disability/physical impairment, i.e., cirrhosis of the liver, which substantially limited one or more of Plaintiff's major life activities and/or bodily functions, including, but not limited to, concentrating, thinking, communicating, and immune system, brain, and neurological functions, within the meaning of the ADAAA, 42 U.S.C. § 12101, *et seq*.

51. In addition, or in the alternative, Defendant perceived or regarded Plaintiff as suffering from a disability/physical impairment within the meaning of the ADAAA, 42 U.S.C. § 12101, *et seq*.

52. In addition, or in the alternative, Plaintiff had a record of a disability/physical impairment, i.e., cirrhosis of the liver, which substantially limited one or more of Plaintiff's major life activities and/or bodily functions, including, but not limited to, concentrating, thinking,

6

communicating, and immune system, brain, and neurological functions, within the meaning of the ADAAA, 42 U.S.C. § 12101, *et seq*.

53. Plaintiff was able to perform the essential functions of his position with or without reasonable accommodation(s).

54. Defendant discriminated against Plaintiff by terminating his employment because Plaintiff suffered from a disability/physical impairment, i.e., cirrhosis of the liver, which substantially limited one or more of Plaintiff's major life activities, because Defendant perceived and/or regarded Plaintiff as suffering from a physical or mental impairment, and/or because Plaintiff had a record of a disability/physical impairment, i.e., cirrhosis of the liver, which substantially limited one or more of Plaintiff's major life activities.

55. Defendant's actions, as alleged herein, constitute a violation or violations of the ADAAA, 42 U.S.C. § 12101, *et seq*., including 42 U.S.C. § 12102(3)(A), and its accompanying regulations.

56. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

57. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages including emotional distress, pain and suffering, past and future lost wages and benefits, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, loss of enjoyment of life, and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

58. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

59. Plaintiff is entitled to recover all costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all Counts and allegations contained herein.

## REQUEST FOR PLACE OF TRIAL

Plaintiff hereby requests that the trial of this matter take place in Kansas City, Kansas.

Respectfully submitted,

**EMPLOYEE & LABOR LAW GROUP OF KANSAS CITY, LLC**

By: /s/Kristi L. Kingston
Kristi L. Kingston, KS Bar No. 19126
12920 Metcalf Avenue, Suite 180
Overland Park, KS 66213
Ph: (913) 286-5200
Fax: (913) 286-5201
Email: kristi@elgkc.com

**ATTORNEY FOR PLAINTIFF**